IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DUSTIN MCCORKLE,　　　　　　　:
　　　　　　　Plaintiff　　　　　:　　Civ. No. 1:13-CV-3077
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
SCHENKER LOGISTICS, INC.,　　 :
　　　　　　　Defendant　　　　　:

## M E M O R A N D U M

This civil case arises from Defendant's revocation of Plaintiff's contingent offer of employment.  Plaintiff alleges that Defendant violated Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. Cons. Stat. § 9100, by revoking his contingent offer due to his misdemeanor and summary convictions that he contends were unrelated to his suitability for employment, and by failing to notify him in writing that he was disqualified in whole or in part based on his criminal history.  Presently before the court is Defendant's motion for summary judgment.  (Doc. 12.)  Defendant contends that it is entitled to judgment as a matter of law because it is undisputed that Plaintiff intentionally withheld information about his criminal history during the hiring process, in violation of Defendant's employment policies and the terms of the offer, thereby warranting his immediate disqualification.  Because the court finds that the CHRIA does not preclude an employer from revoking a conditional offer of employment based on a good faith belief than an applicant intentionally withheld material information on his employment application in violation of the employer's policies, the court will grant Defendant's motion for summary judgment in its entirety.

I.        **Background**

The following facts are undisputed or, where disputed, reflect Plaintiff's version of facts in the record, pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

A.        **Facts**

Defendant, Schenker Logistics Inc. ("Defendant"), is engaged in the business of international freight forwarding, logistical support, and related services for manufacturing companies. (Doc. 15-1, ¶ 2.) Defendant has a comprehensive Employment Policy (Doc. 15-8), which requires all external candidates for employment to "fully complete[ ] and sign[ ]" an application in order to be considered for employment (*id.* at p. 4 of 13). The Employment Policy provides, *inter alia*, that: "True misrepresentations of facts [on the application], confirmed through the background check, may disqualify an applicant from future consideration of employment." (*Id.*)

On August 7, 2013, Tina Pelensky ("Pelensky"), Defendant's Human Resources Manager, interviewed Plaintiff, Dustin C. McCorkle ("Plaintiff"), for a position at Defendant's Carlisle, Pennsylvania facility, located within the Middle District of Pennsylvania. (Doc. 1-2, ¶ 5; Doc. 14, ¶ 20; *see* Doc. 15-11.) During this interview, Plaintiff completed an application for employment (*see* Doc. 15-6), wherein he was asked: "In the last ten years, have you been convicted of, or pleaded guilty to[,] any crimes (including crimes committed during military service)?" (Doc. 15-6, p. 7 of 14). In response thereto, Plaintiff answered "Yes," which prompted him to "briefly describe the details [of the conviction or guilty plea,]

indicating the date, nature[,] and place of the offense and the sentence received."
(*Id.*)  Plaintiff disclosed that he had been convicted of "stalking [and] harassment
while trying to gain custody of [his] daughter."[1]  (*Id.*)

Upon completing the Application, Plaintiff was directed to read and
sign an Applicant Certification form, which provided, *inter alia*, as follows:

> **I understand and agree that any false, misleading, or
> incomplete information given in my application**,
> interview(s), or other pre-employment questionnaires and
> procedure, regardless of when discovered by the
> Company[,] **will be sufficient basis for my
> disqualification for employment** or, if already employed
> by the Company, the termination of my employment with
> the Company.  **I agree that the Company shall not be
> liable in any respect if I am not hired or if my
> employment is terminated as a result of providing such
> false, misleading[,] or incomplete information.**

(*Id.* at p. 9 of 14 (emphasis supplied).)  During his deposition, Defendant
acknowledged that, at the time he completed his application, he understood that
providing false information regarding his criminal history was grounds for
immediate disqualification from employment:

> Q:   For example, on [the Application], it says application
> certification and there's language in there about you
> understanding that [Defendant was] going to do a
> background check?
>
> A:   Yes.
>
> Q:   And you further understanding that any false,
> misleading or incomplete information in this
> application would be grounds to either not hire you
> or terminate you if [Defendant] had hired you?
>
> A:   Yes.

---

[1] Plaintiff did not disclose any additional criminal convictions or guilty pleas to Schenker.
(Doc 14, ¶ 21; Doc. 16, ¶ 21; McCorkle Dep. at pp. 39-42.)  However, there is no indication that
Plaintiff was asked to disclose his criminal history during the interview.  (Doc. 16, ¶ 20.)

(McCorkle Dep. at p. 40.)

Nevertheless, Plaintiff intentionally omitted certain portions of his criminal history from his application. (*See* Doc. 16, ¶¶ 8-9; McCorkle Dep. at pp. 40-41, 68-75; Doc. 15-9.)  In addition to his convictions for stalking and harassment, Plaintiff had been convicted of or pleaded guilty to numerous other misdemeanors and summary offenses, which he failed to disclose, including: public drunkenness, disorderly conduct, possession of drug paraphernalia, possession of a controlled substances, driving under the influence of marijuana, underage drinking, and violating vehicle lighting regulations.  (Doc. 15-9.)  Plaintiff explained in his deposition that he made a judgment call to omit these additional convictions from his application:

> Q:    Now, on [the application], in the box on the bottom it says[,] in the last ten years have you been convicted [of] or pleaded guilty to any crimes including crimes committed during military service. You put yes and then underneath where you were asked to briefly describe the details you put stalking and harassment while trying to gain custody of my daughter.  Is that correct?
>
> A:    Yes.
>
> Q:    But you didn't put anything else; right?
>
> A:    Correct.
>
> Q:    But there were in fact other criminal convictions that you had at that time; is that correct?
>
> A:    Yes.
>
> Q:    Why didn't you put them all down?
>
> A:    Because I've applied [at] a number of companies and no one cares about marijuana charges or a DUI. . . . [I]t always comes back to the stalking and

> harassment, so naturally I put the worst of the
> crimes.

Q:      So you made a judgment call to give an incomplete
        answer?

A:      Yes.

(McCorkle Dep. at pp. 40-41.)

On September 6, 2013, Defendant extended a contingent offer of employment to Plaintiff for the position of ROR Repair Technician, which was expressly conditioned upon satisfactory completion of a criminal background check, reference check, and proof of eligibility of employment.[2]  (Doc. 15-11.)  In regard to the background check, Defendant's Employment Policy provided, in relevant part, as follows:

> Every new employee must have a criminal background
> investigation conducted prior to being hired.  The
> background investigation is conducted by a third party
> vendor who has been approved by the company.
>
> * * *
>
> The individual's conviction record will be reviewed from
> every county the applicant lived in and worked in from the
> past seven (7) years.  Any individual with a felony
> conviction will be reviewed.  The finding of a
> misdemeanor conviction from the past seven (7) years will
> be handled on a case-by-case basis by the Human
> Resources Department.  Factors used to determine whether
> an applicant with a conviction is eligible for hire include,
> but are not limited to, the nature of conviction, length of
> time that has passed since the conviction, circumstances
> surrounding the crime, applicability of the conviction to the
> position applied for, references, and **disclosure of the
> conviction on the employment application**.

---

[2]  The job description for the position likewise provided that candidates "[m]ust be able to pass any federal/state/local government, airport, or company-required background checks, clearances, and/or drug and alcohol tests."  (Doc. 15-12.)

(Doc. 15-8, p. 5 of 13 (emphasis supplied).)  In a sworn affidavit, Lee Sininger ("Sininger"), Defendant's Corporate Director of Human Resources, explained that if an applicant's criminal background report reveals a criminal history, the report and the applicant's application are forwarded to Carrie Burns ("Burns"), Defendant's Corporate Human Resource Representative, to determine if the applicant has been completely forthcoming regarding his criminal background.  (Doc. 15-1, ¶ 6(d).) Any "false, misleading, or incomplete information" provided on the application will result in a revocation of the employment offer.  (*See id.* at ¶¶ 6(d)-7.)  If the applicant has been forthcoming about his criminal background, Sininger and Burns consider the job relatedness of the criminal history and, in doing so, may obtain court records to gather additional information regarding the incidents.  (*Id.*)

Pursuant to Defendant's Employment Policy, Plaintiff authorized Defendant to perform a background check.  (Doc. 1-2, ¶ 12.)  DataQuest, LLC ("DataQuest"), a third-party background screening services vendor, performed the background check and provided a report to Defendant.  (Doc. 15-9.)  Upon reviewing the report, Burns and Sininger discovered that Plaintiff had omitted significant portions of his criminal history from his application and, therefore, had "been far from forthcoming . . . ."  (Doc. 15-1, ¶ 7.)  In his affidavit, Sininger stated that, although the traffic infraction may not have negatively impacted Plaintiff's candidacy for employment, the convictions related to drugs and alcohol would have required further investigation and serious consideration.  (*Id.*)  However, Sininger explained that he and Burns never completed a job relatedness inquiry regarding Plaintiff's criminal history because Plaintiff was immediately disqualified "based upon the fact that his application was false, misleading[,] or incomplete."  (*Id.*)

On September 23, 2013, Defendant[3] sent the results of the criminal history report to Plaintiff (Doc. 15-9, p. 2 of 10; McCorkle Dep. at pp. 58-61), and invited him to "identify any errors, inaccuracies[,] and/or otherwise respond to the information contained in the report within five business days from the date of this letter" (Doc. 15-9, p. 2 of 10).  After receiving no response, Defendant sent a letter to Plaintiff on September 30, 2013, informing him that his "application for employment . . . [had been] denied," and that the decision "was influenced in whole or in part by a consumer report prepared by DataQuest . . . ."  (Doc. 15-13.)

## B.   Procedural Background

On December 4, 2013, Plaintiff initiated this action by filing a complaint against Defendant in the Court of Common Pleas of Cumberland County, Pennsylvania (Doc. 1-2), alleging that Defendant violated the CHRIA by unlawfully revoking his contingent offer of employment due to misdemeanor and summary convictions that were not related to his suitability for employment and by failing to notify Plaintiff in writing that it was revoking his offer of employment due in whole or in part to his criminal history.  Invoking this court's diversity jurisdiction, Defendant removed the action to the Middle District of Pennsylvania on December 23, 2013.  (Doc. 1.)  On June 10, 2014, Defendant filed the instant motion for summary judgment (Doc. 12), brief in support (Doc. 13), statement of material facts (Doc. 14), and supporting exhibits (Doc. 15).  On June 30, 2014, Plaintiff filed a brief in opposition to the motion (Doc. 17), followed by a counter statement of

_____

[3] Plaintiff disputes that this letter was sent by Defendant, arguing that the letter appears to have been sent by DataQuest.  (*See* Doc. 16, ¶ 32.)  However, the letter appears on Defendant's letterhead and is signed, "Sincerely, Schenker Human Resources."  (*See* Doc. 15-9.)  Thus, the court rejects Plaintiff's attempt to make this a disputed issue of fact.

material facts on July 1, 2014 (Doc. 18).  On July 14, 2014, Defendant replied.

Thus, the motion has been fully briefed and is ready for consideration.

## II.        **Legal Standard**

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is only entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the moving party has demonstrated an absence of material fact, the nonmoving party then must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (emphasis in original).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmovant.  *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue.  *Davis v. National R.R.*

*Passenger Corp.*, 733 F. Supp. 2d 474, 485 (D. Del. 2010) (citing *Anderson*, 477 U.S. at 249).

## III.        Discussion

Defendant submits that it is entitled to judgment as a matter of law because the undisputed material facts establish that it did not violate the CHRIA. Specifically, Defendant argues that it did not arbitrarily rely on Plaintiff's criminal history in revoking his conditional offer of employment, and instead revoked Plaintiff's offer because he intentionally misrepresented the extent of his criminal record in violation of Defendant's policies.  Defendant further argues that it fulfilled its obligation to notify Plaintiff of the reason for his disqualification.  The court will address each argument in turn.

### A.      Decision to revoke Plaintiff's conditional offer

The CHRIA prohibits employers from arbitrarily relying on a job applicant's criminal history record information during the hiring process.  *See* 18 Pa. Con. Stat. § 9125; *Hunter v. Port Auth. of Allegheny Cnty.*, 419 A.2d 631, 634 (Pa. Super. Ct. 1980) (explaining that where prior convictions do not in any way reflect on the applicant's present ability to properly discharge the responsibilities required by the position, the convictions cannot provide a basis for denial of employment). Section 9125 of the CHRIA, which regulates an employer's use of an applicant's criminal history record information, provides, in relevant part, as follows:

> (a)  General rule. – Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.

> (b)  Use of Information. – Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.
>
> (c)  Notice. – The employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information.

18 Pa. Con. Stat. § 9125.  Thus, under the CHRIA, when an employer denies employment to an applicant *because* he has been convicted of a misdemeanor or felony, the employer's consideration of the conviction is limited to the extent it relates to the applicant's suitability for the position.  *Negron v. School Dist. of Phila.*, 994 F. Supp. 2d 663, 667 (E.D. Pa. 2014); *see Frankowski v. State Civ. Serv. Comm'n*, Civ. No. 1706 C.D. 2012, 2013 WL 3198733, *4 (Pa. Commw. Ct. June 25, 2013) (finding no CHRIA violation where employer's hiring policy did not "bar employment" based on the applicant's prior criminal convictions, but rather mandated that the employer review the job relatedness of an applicant's criminal record).  Here, however, the undisputed evidence of record shows that Defendant did not revoke Plaintiff's job offer *because of* his misdemeanor convictions.  Rather, it revoked his offer because he intentionally misrepresented his criminal history on his employment application.

It is undisputed that Defendant asked Plaintiff to disclose his ten year criminal history, which the CHRIA expressly authorizes an employer to require, and that Defendant's Employment Policy stated that providing "any false, misleading, or incomplete information" on the application was grounds for revocation of an offer of employment.  Plaintiff's signature on his application certified, *inter alia*, that he understood Defendant's policy against, and the consequences of, providing false or misleading criminal history information.  Despite the risk of possible

disqualification, Plaintiff only disclosed two of his prior ten convictions – stalking and harassment – when, in fact, he had been convicted of or pleaded guilty to eight additional crimes during the relevant time period – public drunkenness (twice), disorderly conduct, possession of drug paraphernalia, possession of a controlled substance, driving under the influence of marijuana, violating vehicle lighting regulations, and underage drinking.

Plaintiff's arguments to the effect that he was justified in withholding information pertaining to these additional convictions because the undisclosed crimes were unrelated to his suitability for employment and because he knew that they would inevitably be revealed by the background check are without merit.  Even assuming, *arguendo*, that the convictions were unrelated to the position, such a determination is to be made by the employer, not the applicant.  *See, e.g.*, 18 Pa. Con. Stat. § 9125(b) ("Felony and misdemeanor convictions may be considered by *the employer*").  Moreover, the application's instructions, which Plaintiff admittedly understood, directed him to disclose any and all convictions in the previous ten years and warned him of the potential consequences for failing to do so.  Once Defendant became aware of the numerous omissions on Plaintiff's application –  despite its explicit instructions to provide complete information – it had a reasonable basis to revoke his offer of employment pursuant to the terms of the conditional offer and its hiring policies, and was under no obligation to consider whether Plaintiff's convictions were related to his suitability for the position.[4]  *See Fullman v. Potter*,

---

[4]  Plaintiff's attempt to create a material issue of fact out of Defendant's acquisition of the court documents underlying his convictions is also without merit.  Specifically, Plaintiff asserts that, although Defendant claims to have disqualified him for misrepresenting his criminal history, it must have considered the job relatedness of those convictions because it acquired court documents related to

(continued...)

254 F. App'x 919, 920 (3d Cir. 2007) (finding that the employer, in the context of federal and state employment discrimination laws, had a legitimate, non-discriminatory reason for terminating the employee because he provided false information on his employment application); *Nelson v. DeVry, Inc.*, Civ. No. 07-4436, 2009 WL 1213640, *8 (E.D. Pa. Apr. 23, 2009) (finding that employer's good faith belief that employees had falsified their employment applications was a legitimate, non-discriminatory reason for terminating their employment). Accordingly, the court will grant Plaintiff's motion for summary judgment in this regard.

### B.   Written notification of disqualification

The court will also grant Defendant's motion for summary judgment as to Plaintiff's claim that Defendant violated the CHRIA by failing to notify him in writing that the decision to revoke his contingent offer of employment was based in whole or in part on his criminal history record information. Plaintiff argues that Defendant's revocation letter "simply informed [him] that his employment offer had been revoked due 'in whole or in part to a **consumer report** prepared by DataQuest, LLC and/or information [Defendant] received from Trans Union" (emphasis in original), and that the letter "did not clearly indicate whether [Defendant] relied upon [Plaintiff]'s criminal history." (Doc. 17, p. 24 of 28.) However, as discussed above,

---

⁴(...continued)
those convictions, a step it would not have taken if it simply revoked his offer due to the omissions on his application. (*See* Doc. 17, pp. 21-23 of 28.)  This argument is misguided at best and disingenuous at worst.  The undisputed evidence shows that Defendant did not obtain the underlying court documents until after this litigation commenced. (*See* Doc. 21-1, ¶¶ 5-11, Ex. A-C.)  Indeed, the lower right hand corner of the docket reports and court documents, which are marked as Exhibits 4(a) and 4(b) to Plaintiff's counter statement of undisputed material facts (Doc. 18), clearly indicate that the documents were printed on February 11, 2014, and February 12, 2014, approximately five months *after* Defendant revoked Plaintiff's conditional offer. (*See* Doc. 18-4 & 18-5; Doc. 21-1, ¶ 11.)

the undisputed evidence of record shows that Defendant revoked Plaintiff's conditional offer because he intentionally misrepresented his criminal history on his employment application in violation of Defendant's employment policies. As such, the disqualification was not based on Plaintiff's criminal history record information and, therefore, Defendant was under no obligation to comply with the CHRIA's notification requirement.[5] Accordingly, the court will grant Defendant's motion for summary judgment on this basis.

## IV.      Conclusion

For the reasons stated above, the court will grant Defendant's motion for summary judgment in its entirety.

                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated:  October 8, 2014.

---

[5] Assuming, *arguendo*, that Defendant relied on the criminal history record information in determining that Plaintiff had misrepresented his criminal history on his employment application, the court finds that Defendant complied with the CHRIA's notification requirement. Plaintiff admits that Defendant sent him a copy of DataQuest's report by letter dated September 23, 2013,wherein it referred to the report as a "consumer report" and invited him to "identify any errors, inaccuracies, and/or otherwise respond to the information contained in the report within five business days." (*See* Doc. 15-9, p. 2 of 10 ("You recently authorized our firm to obtain consumer reports and/or investigative consumer reports about you from a consumer reporting agency. Enclosed please find a copy of the report we obtained from DataQuest, LLC . . . ."); Doc. 14, ¶¶ 32-33; Doc. 16, ¶¶ 32-33.) On September 30, 2013, Defendant notified Plaintiff by letter that it was revoking his conditional offer and that its decision "was influenced in whole or in part by a consumer report prepared by DataQuest . . . ." (Doc. 15-13.) Thus, Defendant complied with the CHRIA by notifying Plaintiff in writing that Defendant's decision to revoke his conditional offer was "based in whole or in part on criminal history record information." 18 Pa. Cons. Stat. § 9125(c).